# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **SANDRA HARRIS**<br>7176 Quarterhorse Drive<br>Springboro, OH 45066 | :<br>:<br>: | Case No. 1:21-cv-417 |
| | : | Judge |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | |
| | : | |
| **CHILDREN'S HOME OF<br>CINCINNATI**<br>5050 Madison Road<br>Cincinnati, OH 45227 | :<br>:<br>:<br>: | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT AND JURY DEMAND

Plaintiff Sandra Harris, for her Complaint against Children's Home of Cincinnati ("CHC"), states as follows:

### I.  PRELIMINARY STATEMENT

1. This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, the Ohio Civil Rights Act, Ohio Rev. Code § 4112.01, *et. seq*, and Ohio public policy.  Ms. Harris, a former employee of CHC, alleges that Defendant interfered with her rights under the FMLA and discriminated against her under both the ADA and the Ohio Civil Rights Act by terminating her because of her disability.  Alternatively, Ms. Harris alleges that CHC terminated her for reporting a felony to law enforcement officials in violation of Ohio public policy.

2. Ms. Harris seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for her economic injuries, liquidated damages, compensatory damages for her non-economic injuries, equitable relief in the form of reinstatement or front pay, and punitive damages. Finally, Ms. Harris seeks payment of her reasonable attorney fees and costs.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 to secure protections and redress deprivations of rights conferred by the ADA and FMLA. This Court may assume supplemental jurisdiction over Ms. Harris's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as her federal claims.

4. Venue with this Court is appropriate because all or part of the claim for relief arose in the Southern District of Ohio.

## III. PARTIES

5. Plaintiff Sandra Harris is a United States citizen and a resident of Warren County, Ohio. Ms. Harris is disabled as that term is defined by the ADA.

6. CHC employed Ms. Harris as a Lead Mentor Intervention Specialist II. CHC is located in the Southern District of Ohio. CHC is an "employer" as that term is defined in the ADA and is a "covered employer" as that term is defined in the FMLA.

## IV. ADMINISTRATIVE HISTORY

7. On September 4, 2020, Ms. Harris filed an administrative charge of discrimination and retaliation against CHC with the Equal Employment Opportunity Commission (473-2020-01625). She alleged that CHC retaliated against her for requesting a reasonable accommodation and terminated her because of her disability. The EEOC issued Ms.

2

Harris a Notice of Right to Sue on March 23, 2021. This action is brought within 90 days of the issuance of the right-to-sue notice.

### V. STATEMENT OF THE CASE

8. CHC hired Ms. Harris in or about July 2018 as an Intervention Specialist II. In that role, Ms. Harris was responsible for teaching students with severe learning disabilities.

9. On August 30, 2018, a CHC student struck Ms. Harris in the face with a computer mouse. Ms. Harris's physician diagnosed her with a concussion.

10. Ms. Harris told John Horne, Principal at CHC, that she intended to report the assault to law enforcement.

11. Mr. Horne told Ms. Harris that it was against school policy to report assaults against students to law enforcement. Ultimately, Ms. Harris reported the student's assault to law enforcement. Law enforcement subsequently charged the student with assault.

12. On November 19, 2019, Ms. Harris disciplined a student for insubordination. After using profanity and calling her names, the student threw a backpack at Ms. Harris, which glanced off her head, causing Ms. Harris significant head pain.

13. Ms. Harris went to the administrative building and spoke with Heather Ellison, Chief Strategy Officer. Ms. Harris informed Ms. Ellison about the injury and told her that she needed to seek medical care.

14. Ms. Ellison approved Ms. Harris's request to leave CHC premises. Ms. Harris drove to an urgent care facility.

15. The medical professional at the urgent care facility diagnosed Ms. Harris with a concussion.

16. Ms. Harris contacted Mr. Horne and informed him of her concussion and requested the rest of the day off of work.

17. Mr. Horne responded by telling Ms. Harris that she could take the day off. He further indicated that he had reviewed the video footage and did not believe the backpack had hit Ms. Harris's head.

18. After concluding her call with Mr. Horne, Ms. Harris called the Cincinnati Police Department ("CPD") to report the assault.

19. Ms. Harris returned to work on November 20, 2019, despite experiencing headaches and dizziness related to the concussion. Shortly after the start of the school day, Ms. Ellison and three CPD officers met with Ms. Harris. During that meeting, Ms. Ellison told Ms. Harris that she could not "call the police every time a student hits [her]." The CPD officers told Ms. Harris they would not write an incident report.

20. Later that day, Ms. Harris met with Roderick Hinton, Chief Administrative Officer at CHC. Mr. Hinton reiterated CHC's position that she could not report acts of assault against her to law enforcement.

21. Mr. Hinton then told Ms. Harris that if she was not happy with her job, she should resign. Ms. Harris told Mr. Hinton she did not want to resign.

22. Late in the evening on November 21, 2019, Ms. Harris, experiencing headaches and dizziness related to the concussion, informed Mr. Horne that she needed to take November 22 off from work. Mr. Horne approved her request.

23. On Saturday, November 23, 2019, Ms. Harris emailed John Banchy, CEO of CHC, to confirm that, although Mr. Hinton had suggested she resign, she intended to remain at CHC and would not resign.

4

24. Late in the evening on November 24, 2019, Ms. Harris, still feeling the side effects of the concussion, informed Mr. Horne that she needed to take November 25 off of work.

25. On the morning of November 25, Mr. Horne approved Ms. Harris's request for time off.

26. Later in morning of November 25, Mr. Hinton emailed Ms. Harris to tell her that Mr. Banchy had forwarded her November 23 email to him, and that Ms. Harris was expected to remain an employee at CHC.

27. In the afternoon of November 25, Ms. Harris attended an appointment with her primary care physician. Due to her head injury from the assault, Ms. Harris's physician told her that she required a two-week leave of absence due to post-concussion syndrome. Ms. Harris's physician faxed a note to Tony Boyle, an employee in CHC's human resources department, confirming that Ms. Harris required a two-week leave of absence because of side effects she was experiencing related to her post-concussion syndrome.

28. That afternoon, despite earlier acknowledging that Ms. Harris was not resigning, Mr. Hinton emailed Ms. Harris, informing her that CHC had accepted her resignation. At no point did Ms. Harris offer to resign.

29. CHC terminated Ms. Harris because of her disability and use of FMLA leave.

30. Alternatively, CHC terminated MS. Harris because she reported the assault she suffered to the police.

31. As a direct and proximate result of CHC's unlawful actions, Ms. Harris has suffered and continues to suffer economic injuries in the form of lost pay and benefits, as well as non-economic injuries, including emotional distress and pain and suffering.

## VI. STATEMENT OF CLAIMS

### Count 1: Disability Discrimination
### (42 USC § 12101 and Ohio Rev. Code § 4112.02)

32. Ms. Harris incorporates paragraphs 1 through 31 as if fully rewritten herein.

33. Ms. Harris suffers from post-concussion syndrome.

34. Ms. Harris is qualified to perform the essential functions of her position with reasonable accommodations.

35. CHC terminated Ms. Harris because of her disability and the accommodations she requested.

36. As a result of CHC's illegal actions, Ms. Harris has suffered damages including lost wages and emotional distress.

37. CHC acted with malice and a conscious disregard for Ms. Harris's federally-protected rights.

### Count 2: Retaliation
### (42 USC § 12101 and Ohio Rev. Code § 4112.02)

38. Plaintiff incorporates paragraphs 1 through 37 as if fully rewritten herein.

39. Ms. Harris engaged in protected activity when she requested a leave of absence as a reasonable accommodation for her disability.

40. CHC was aware of Ms. Harris's protected activity.

41. CHC took adverse action against Ms. Harris after she engaged in protected activity.

42. There is a causal connection between Ms. Harris's protected activity and the adverse action CHC took against her.

43. As a result of CHC's actions, Ms. Harris suffered damages, including lost wages and emotional distress.

44. CHC acted with malice and a conscious disregard for Ms. Harris's federally-protected rights.

### Count 3: Failure to Accommodate
### (42 USC § 12101 and Ohio Rev. Code § 4112.02)

45. Plaintiff incorporates paragraphs 1 through 44 as if fully rewritten herein.

46. Ms. Harris suffers from post-concussion syndrome.

47. Ms. Harris requested an accommodation in the form of a brief leave of absence. The accommodation is reasonable because a leave of absence would allow her to perform the essential functions of her job as an Intervention Specialist II and would not unduly harm CHC.

48. Ms. Harris is qualified to perform the essential functions of her position with a reasonable accommodation.

49. CHC ignored Ms. Harris's request for an accommodation and terminated her. CHC did not propose a reasonable, alternative accommodation that would allow Ms. Harris to perform the essential functions of her position.

50. As a result of CHC's illegal actions, Ms. Harris has suffered damages including lost wages and emotional distress.

51. CHC acted with malice and a conscious disregard for Ms. Harris's federally-protected rights.

### Count 4: Interference
### (29 USC § 2601)

52. Plaintiff incorporates paragraphs 1 through 51 as if fully rewritten herein.

53. Ms. Harris was eligible for FMLA leave. She had worked at CHC for more than 12 months and had worked in excess of 1250 hours in the previous year.

54. CHC employs more than 50 people within a 75-mile radius of Ms. Harris's work location.

55. Ms. Harris was entitled to FMLA leave. She suffered from a serious health condition, post-concussion syndrome, that resulted in an incapacity of more than three days.

56. CHC interfered with Ms. Harris's use of FMLA leave. CHC used Ms. Harris's use of and request for FMLA leave as a negative factor in the decision to terminate her employment.

57. As a result of CHC's actions, Ms. Harris suffered damages, including lost wages and other economic harm.

58. CHC acted in bad faith.

### Count 5: Ohio Public Policy

59. Plaintiff incorporates paragraphs 1 through 58 as if sully rewritten herein.

60. Ohio law provides that an assault committed in a school, on school premises, or in a school building against a schoolteacher is a felony of the fifth degree (O.R.C. § 2903.13(C)(4)(d)). Ohio law also imposes criminal liability on any person who fails to report a committed felony to law enforcement authorities (O.R.C. § 2921.22).

61. Dismissing employees for reporting acts of assault would jeopardize public policy.

62. CHC was motivated by Ms. Harris's reporting of assaults on CHC's premises to the police when it terminated her employment.

63. CHC lacks an overriding legitimate business justification for the termination.

64. As a result of CHC's unlawful actions, Ms. Harris has suffered damages, including lost wages and emotional distress.

65. CHC acted with malice and a conscious disregard for Ms. Harris's rights.

## PRAYER FOR RELIEF

Wherefore, Ms. Harris demands judgment against CHC as follows:

1. An award of compensatory damages for all economic damages suffered by Ms. Harris in an amount to be determined at trial, plus interest;

2. An equal amount in liquidated damages;

3. An order reinstating Ms. Harris to her previous position, inclusive of all pay increases and benefits to which she would have been entitled had she not been terminated, or in the alternative, an award of front pay;

4. An award of compensatory damages for all non-economic damages suffered;

5. An award of punitive damages;

6. An award of Ms. Harris's reasonable attorney fees and costs; and

7. An award of any other relief in law or equity to which Ms. Harris is entitled.


Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
Daniel J. Treadaway (OH No. 0098000)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff Sandra Harris demands a jury trial to resolve all issues of fact related to her Complaint.

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
